UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS ANDREW DiDONNA,

*Plaintiff*,

v.

HAROLD L. SMITH, *et al.*,

*Defendants*.

No. 22-CV-6107 (KMK)

OPINION & ORDER

Appearances:

Louis Andrew DiDonna
Lords Valley, PA
*Pro Se Plaintiff*

Khalid Bashjawish, Esq.
Sullivan County
Monticello, NY
*Counsel for Defendants Harold L. Smith, Deputy Fancher, Deputy Lawrence, Wendy Moore, Corporal Compasso, Sullivan County New York, Lieutenant Bini, Deputy Skow, and Kyle Ferrand*

Jessica Michelle Acosta-PettyJohn, Esq.
NYS Office of the Attorney General
New York, NY
*Counsel for Defendant Connor Stewart*

Paul Andrew Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Attorney for Defendant Prime Care Medical Cooperation*

KENNETH M. KARAS, United States District Judge:

Louis Andrew DiDonna ("Plaintiff"), proceeding pro se, brings this Action against Harold L. Smith, Prime Care Medical Cooperation, Deputy Fancher, Deputy Laurence, Supervisor John Doe, Julie Starner, Nurse Wendy Moore, Nurse Santinni, Kim Doe, Nurse Lyn Elkins, Nurse Christine Bermington, Nurse Jane Doe, Doctor John Doe, Corporal Compasso,

Sullivan County, Lieutenant Bini, Nurse Kim, Nurse Anderson, Deputy Skow, Kyle Ferrand, and Connor Stewart (collectively, "Defendants"), alleging claims for excessive force, failure to intervene, inadequate medical care, and inadequate living conditions, pursuant to 42 U.S.C. § 1983 and the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104–191, 110 Stat. 1936 (Aug. 21, 1996). Currently before the Court is Connor Stewart's ("Stewart") Motion To Dismiss (the "Stewart Mot.") the Third Amended Complaint ("TAC"), (*see* Stewart Mot. To Dismiss (Dkt. No. 99)), and Harold Smith, Kyle Farrand, Anthony Skow, Wendy Moore, Lieutenant Bini, Deputy Fancher, Deputy Lawrence, Corporal Compasso, and Sullivan County's (collectively, the "Smith Defendants") Motion To Dismiss (the "Smith Defs.' Mot.") the Third Amended Complaint, (*see* Smith Defs.' Mot. To Dismiss (Dkt. No. 102).) For the reasons set forth below, Stewart's Motion is granted in its entirety, and the Smith Defendants' Motion is granted in part with respect to the claims against Harold Smith, Kyle Farrand, Anthony Skow, Lieutenant Bini, Deputy Fancher, Deputy Lawrence, Corporal Compasso, and Sullivan County, and denied with respect to the claims against Wendy Moore.

## I. Background

### A. Factual Background

The following facts are drawn from the Third Amended Complaint, appended materials, and Plaintiff's Opposition papers, and are assumed to be true for the purpose of resolving the instant motions.

On March 15, 2021, Plaintiff was arrested by Defendants Skow, Ferrand, and Stewart, among others. (TAC 16.) During this arrest, Stewart and Ferrand picked Plaintiff up and slammed him on the police car, shattering his rib cage. (*Id.*) Skow also tightened Plaintiff's handcuffs hard enough to damage Plaintiff's right hand. (*Id.*)

Following his arrest, Plaintiff was incarcerated in Sullivan County Jail for a year awaiting sentencing. (*Id.* 1–2.) Due to understaffing, the jail housed inmates who had recently had surgical procedures among the general population, including an individual suffering from a staph infection. (*Id.* 2.) Plaintiff was housed on the same cell block as this individual and contracted a staph infection from him. (*Id.*) This infection was discovered while Plaintiff was being treated for injuries he obtained during his arrest, when the doctor noted a swollen spot on his lower back area. (*Id.*) The doctor arranged for Plaintiff to have surgery on August 2, 2021. (*Id.*) However, on that date, Officers Fancher and Lawrence accidentally brought Plaintiff to the emergency room, and Plaintiff received care there rather than from a specialist. (*Id.* 2, 10–11.) Because of this mistake, Plaintiff did not receive the proper follow-up care he would have received from the specialist. (*Id.* 2.)

Following the first surgery, Plaintiff began to experience increasingly worse symptoms, including tissue damage from the staph infection which interfered with Plaintiff's bowel movements. (*Id.* 3.) Plaintiff had his second surgery on August 10, 2021. (Pl.'s Opp'n to Smith Defs.' Mot. 3 (Dkt. No. 109).) Despite Defendant Nurse Moore being on duty at the jail over the next two days, Plaintiff did not have his gauze changed until three days after surgery. (*Id.*) The nurse who changed his gauze remarked how dangerous this was. (*Id.*) Over the next three months, Plaintiff received inadequate wound care, including a bloody gauze being left on for days at a time and healed tissue being intentionally retorn by one of the nurses, Christine Bermington. (TAC 14.) Plaintiff experienced worsening symptoms including pain swallowing, walking, and getting up and down; foul-smelling urine; and difficulty using the restroom normally. (*Id.* 3.) Despite this, he was not admitted to the hospital. (*Id.* 11.)

In September 2021, Defendant Corporal Compasso told another officer not to pass through Plaintiff's area because Plaintiff had a staph infection. (Pl.'s Opp'n to Smith Defs.' Mot. 7.) Other inmates overheard and mocked Plaintiff for his illness. (*Id.*) On November 14, 2021, the nurse performing Plaintiff's wound care used a pair of scissors on him which had previously been used on another inmate and had not been washed. (TAC 4.)

B. Procedural Background

On June 27, 2022, Plaintiff initiated an action before another judge of this District, bringing claims of excessive force and failure to intervene in violation of the Fourteenth Amendment against Robert Maas, Conner Stewart, Douglas Ketchum, Kyle Farrand, and Anthony Skow. (See *generally* Compl. (Dkt. No. 2, 22-CV-5417 Dkt.); Am. Compl. (Dkt. No. 11 (22-CV-5417 Dkt.).) After full discovery in that matter, Judge Halpern granted Defendants' motion for summary judgment after Plaintiff failed to submit an opposition and dismissed the matter with prejudice. *DiDonna v. Maas*, No. 22-CV-5417, 2024 WL 5202239 (S.D.N.Y. Dec. 23, 2024), *motion for relief from judgment denied*, 2025 WL 743835 (S.D.N.Y. Mar. 7, 2025) ("*DiDonna I*").

Plaintiff initiated this Action on July 18, 2022. (*See* Compl. (Dkt. No. 2).) On July 2, 2022, Plaintiff was granted in forma pauperis status. (*See* Order (Dkt. No 4).) On August 5, 2022, Plaintiff filed an Amended Complaint. (*See* Am. Compl. (Dkt. No. 7).) On January 17, 2025, Plaintiff filed a Second Amended Complaint, dated December 29, 2024.[1] (*See* Second Am. Compl. (Dkt. No. 48).) On March 7, 2025, Plaintiff filed a Third Amended Complaint, which was dated January 6, 2025. (*See* Third Am. Compl. (Dkt. No. 53).) On January 5, 2026,

[1] Several of Plaintiff's submissions are dated several weeks or months before they were entered on the docket. In the interest of clarity, the Court notes both dates where applicable.

Stewart filed a Motion To Dismiss the Third Amended Complaint. (*See* Stewart Mot. To Dismiss (Dkt. No. 99) *and* Stewart Mem. of Law. in Supp. of Mot. To Dismiss ("Stewart Mem.") (Dkt. No. 100).) On January 9, 2026, the Smith Defendants filed a Motion To Dismiss the Third Amended Complaint. (*See* Smith Defendants' Mot. To Dismiss (Dkt. No. 102); Smith Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Smith Defs.' Mem.") (Dkt. No. 102-5).) On February 2, 2026, Plaintiff filed an Opposition to Stewart's Motion To Dismiss. (*See* Plaintiff's Opposition to Stewart Mot. To Dismiss ("Pl.'s Opp'n to Stewart Mot.") (Dkt. No. 107).). On February 4, 2026, Plaintiff filed an Opposition to the Smith Defendants' Motion To Dismiss. (*See* Plaintiff's Opposition to Smith Defendants' Mot. To Dismiss ("Pl.'s Opp'n to Smith Defs.' Mot.") (Dkt. No. 109).). On February 19, 2026, Stewart replied. (*See* Stewart Reply Mem. of Law. in Supp. of Mot. To Dismiss ("Stewart Reply") (Dkt. No. 111).) On February 23, 2026, after the deadline set by the Court, the Smith Defendants replied. (*See* Smith Defs.' Reply Mem. of Law. in Supp. of Mot. To Dismiss ("Smith Defs.' Reply") (Dkt. No. 112).) On June 17, 2026, Plaintiff filed a letter to the Court requesting that the Court disregard arguments made by the Smith Defendants on reply because their reply was delinquent. (*See* Letter from Pl. to Court (Dkt. No. 115).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering the present motions to dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And the Court must "draw[ ] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complainant is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furc*o, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

1. Preclusive Effect of Judge Halpern's Previous Decision

Defendants assert that the claims of excessive force and failure to intervene stemming from Plaintiff's arrest on March 15, 2021 are barred by the doctrines of collateral estoppel and claim preclusion. (*See* Stewart Mem. 3, 6; Smith Defs.' Mem. 3.) Specifically, Plaintiff filed a lawsuit on June 27, 2022 against Anthony Skow, Kyle Ferrand, Constable Ketchum, Conner

Stewart, and Robert Mass for allegedly injuring his wrist and rib during his arrest. (*See generally* Compl. (Dkt. No. 2, 22-CV-5417 Dkt.).) After full discovery in that matter, Judge Halpern granted Defendants' motion for summary judgment after Plaintiff failed to submit an opposition and dismissed the matter with prejudice. *See DiDonna I*, 2025 WL 743835. Plaintiff argues that he should not be precluded from relitigating these claims because complications out of his control prevented him from filing an opposition to the motion for summary judgment: specifically, a mistake with respect to Plaintiff's address preventing him from receiving mail he needed to submit his opposition and the New York Legal Assistance Group ("NYLAG"), which had helped him prepare his briefs, had gone out of business. (Pl.'s Opp'n to Stewart Mot. 2; Pl.'s Opp'n to Smith Defs.' Mot. 5–6.)

"By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" res judicata and collateral estoppel "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)); *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002) ("These related but distinct doctrines operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits.").

"The preclusive effect of a federal court's judgment issued pursuant to its federal-question jurisdiction is governed by the federal common law of preclusion." *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012); s*ee also Taylor*, 553 U.S. at 891 ("For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res

judicata[.]"). Plaintiff's previous suit presented a federal question, being brought under 42 U.S.C. § 1983, and thus the preclusive effect of that suit is governed by federal common law. *Walker v. Vargas*, No. 11-CV-9034, 2013 WL 4792765, at *3 (S.D.N.Y. Aug. 26, 2013). However, there is "no discernible difference between federal and New York law concerning *res judicata*[.]" *Algonquin Power Income Fund v. Christine Falls of New York, Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010) (summary order) (quoting *Marvel Characters,* 310 F.3d at 286); *see also Green Materials of Westchester v. Town of Cortlandt*, No. 15-CV-3257, 2015 WL 9302838, at *5 n.3 (S.D.N.Y. Dec. 21, 2015) (same). Under the federal or state standard, "[c]laim preclusion requires a showing that '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997, 2016 WL 236249, at *4 (S.D.N.Y. Jan. 20, 2016) (quoting *Technomarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)).

Plaintiff appears to dispute the first element of this inquiry, whether the previous action involved an adjudication on the merits, as he claims that the only reason the previous case was decided in Defendants' favor was that he failed to submit an opposition and such failure was due to circumstances outside of his control. (*See* Pl.'s Opp'n to Smith Defs.' Mot. 5.) However, "[a] judgment on the merits for purposes of *res judicata* is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment." *Gianatasio v. D'Agostino,* 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012). Moreover, "[a] dismissal with prejudice constitutes a judgment on the merits just as fully and completely as if the order had been entered after trial[.]" *Id.* at 349.

In dismissing Plaintiff's previous action with prejudice, Judge Halpern addressed Plaintiff's failure to file an opposition to Defendants' motions for summary judgment. Judge Halpern noted that Plaintiff filed a notice of change of address after Defendants filed their motions and that Defendants served copies of their motion papers at Plaintiff's updated address. *DiDonna I*, 2024 WL 5202239, at *1 n.3. Judge Halpern also granted multiple extensions for Plaintiff to file his opposition, both sua sponte and in response to Plaintiff's request. *Id.* Judge Halpern noted that he previously had issued an order cautioning Plaintiff that the motion would be deemed fully submitted and unopposed was mailed to Plaintiff. *Id.* Given that "Plaintiff had ample notice of Defendants' motions for summary judgment," but still failed to file any opposition, Judge Halpern deemed the motions fully submitted and unopposed. *Id.*

Moreover, though the summary judgment motions were unopposed, Judge Halpern noted his duty "to decide whether the movant is entitled to judgment as a matter of law" including by "ensur[ing] that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Id.* at *4. Finally, Judge Halpern recognized that "[a] summary judgment motion in a *pro se* case 'may be granted as unopposed only if (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the court is satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Lurch v. Berry*, No. 20-CV-2312, 2021 WL 3668113, at *3 (S.D.N.Y. Aug. 17, 2021). Given this undisputed procedural history, the Court concludes that Judge Halpern gave Plaintiff ample opportunity to submit an opposition, and that Judge Halpern's dismissal of Plaintiff's claims with prejudice thus constituted an adjudication on the merits. *See*

*Taylor*, 553 U.S. at 892 (explaining that preclusion doctrines apply to matters that parties had a "full and fair *opportunity*" to litigate" (emphasis added)).

As to the second factor, there is no dispute that the original action involved the same parties, namely Plaintiff DiDonna and Defendants Skow, Ferrand, and Stewart. (*See* Compl. (Dkt. No. 2, 22-CV-5417 Dkt.); Third Am. Compl. (Dkt. No. 53).)

Finally, Plaintiff's claim here arises out of the same transaction or occurrence underlying the previous action and was or should have been raised in those earlier actions. Under a transactional approach to res judicata, "[i]n determining what constitutes the same transaction, the court should look to: how the facts are related in time, space, origin or motivation; whether they form a convenient trial unit; and whether treating them as a unit conforms to the parties' expectations." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) (*citing Marinelli Assocs. v. Helmsley-Noyes Co.*, 705 N.Y.S.2d 571, 575–76 (App. Div. 2000)). A later claim will be barred if it arises out of the same facts as the earlier claim, even if the later claim seeks recovery under a different legal theory. *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997); *see also Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) ("[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claims into various suits, based on different legal theories[.]").

Plaintiff's claims here are based on the same facts giving rise to the previous action—the allegedly excessive force used by Defendants Stewart, Skow, and Ferrand in effectuating Plaintiff's arrest on March 15, 2021. Plaintiff also brought claims of excessive force and failure to intervene in the previous action. *See DiDonna I*, 2024 WL 5202239, at *1.

Because all three elements of claim preclusion are met, Plaintiff's excessive force and failure to intervene claims are dismissed with prejudice.[2] The claims against Defendant Stewart, Skow, and Ferrand are thus dismissed in their entirety.

2. Failure to State a Claim

Plaintiff also brings claims alleging that Defendants violated his due process rights under the Fourteenth Amendment by denying him adequate medical care and adequate living conditions while in custody. (TAC 7.) The Smith Defendants interpret the Third Amended Complaint to allege an inadequate medical care claim against Defendants Smith, Bini, Fancher, Lawrence, and Moore and an inadequate living condition claim against Smith and Bini. (Smith Defs.' Mem. 3.) The Court agrees with this interpretation.[3]

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

---

[2] Because the Court concludes that the claims are precluded under the doctrine of res judicata, it need not consider whether issue preclusion applies. *Kupfer v. Residential Mortg. Sol. LLC*, No. 19-CV-2738, 2020 WL 13572821, at *8 (E.D.N.Y. Dec. 1, 2020).

[3] With respect to each Defendant, the Third Amended Complaint alleges: "Warden Smith could have stepped up . . . to put a stop to the inadequate medical care . . . as well as stopping the inadequate living conditions"; Bini "agree[d] himself that [Plaintiff] was not receiving the proper medical care" and was "aware of what was going on"; Fancher took Plaintiff "out for that medical trip . . . to the wrong place"; Lawrence also took Plaintiff on the same trip; and Moore was the head nurse. (TAC 10–11.)

a. <u>Inadequate Medical Care</u>

Plaintiff alleges that Defendants deprived him of adequate treatment for his staph infection which developed into methicillin-resistant Staphylococcus aureus ("MRSA"). (TAC 3 (alleging "this extremely strong staph infection had turned to mer[s]a").) A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

However, a conditions of confinement claim brought by a pretrial detainee is analyzed under the Fourteenth Amendment. *Id.* at 29; *see also Edwards v. Arocho*, 125 F.4th 336, 350 (2d Cir. 2024) (applying the Fourteenth Amendment to a pretrial detainee's conditions of confinement claim). "Like under the Eighth Amendment, deliberate indifference pursuant to the Fourteenth Amendment has both an objective and a subjective prong." *Figueroa v. County of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018). The objective prong is the same under either analysis: It requires that the deprivation at issue be, "in objective terms, sufficiently serious." *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) ("The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." (citation and quotation marks omitted)). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care is

sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702).

The subjective prong differs depending on whether an inmate is a convicted prisoner or a pretrial detainee. In the case of pretrial detainees, "the 'subjective prong' (or 'mens rea prong') . . . is defined objectively." *Darnell*, 849 F.3d at 35 (italics omitted). After *Darnell*, pretrial detainees asserting conditions of confinement claims under the Fourteenth Amendment must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*; *see also Figueroa*, 2018 WL 3315735, at *4 (same). Plaintiff alleges the inadequate medical care occurred while he was in pretrial custody at the Sullivan County Jail. (TAC 1–2.) Accordingly, the Court evaluates his claim under this standard.

The Court will analyze the sufficiency of Plaintiff's pleadings with respect to each moving Defendant.

i. Fancher and Lawrence

Fancher and Lawrence are alleged to have taken Plaintiff to the emergency room by mistake, rather than to the specialist he was meant to see. (TAC 2, 10–11.) This mistake allegedly led to a series of events whereby Plaintiff did not receive proper follow-up care, his condition worsened, and he therefore required multiple surgeries within a month, for which Plaintiff repeatedly received inadequate wound care. (TAC 2–3, 10–11.) Defendants argue that Fancher and Lawrence's actions "d[id] not rise to inadequate, deprived, or even somewhat delayed medical care" merely because "[P]laintiff did not like the emergency room care he received instead of the doctor he preferred." (Smith Defs.' Mem. 5.) They also assert that Plaintiff received the surgery he needed, just not by the specialist. (*Id.* 4–5.) In opposition, Plaintiff alleges that the nurse practitioner who performed the emergency room procedure said she did not normally perform such a procedure and asserts that the post-surgery directions were "neglected causing even more serious problems." (Pl.'s Opp'n to Smith Defs.' Mot. 2–3.)

Even construing Plaintiff's allegations liberally, Plaintiff fails to plausibly establish that the medical problems he claims were caused by the procedure being performed in the emergency room, rather than by the failure to follow post-surgery instructions. (TAC 11 (asserting had Plaintiff seen the proper surgeon, he would have had "a much better chance of receiving the proper follow up care").) The failure to follow post-surgery instructions is not attributable to Fancher and Lawrence, and thus, Plaintiff has failed to allege "what harm, if any, the" mistaken trip to the emergency room—the only conduct in which Plaintiff implicates Fancher and Lawrence—"has caused or w[as] likely [to] cause" him. *Salahuddin*, 467 F.3d at 279. Moreover, the fact that Plaintiff did not see the specialist he wanted to see "does not create a constitutional claim" because it is a "mere disagreement over the proper treatment." *Barnes v.*

*NYC D.O.C. Med. Dep't C-74*, No. 11-CV-3565, 2011 WL 2848136, at *3 (S.D.N.Y. July 8, 2011) (finding plaintiff did not state a claim for inadequate medical care as a result of the fact he did not receive one treatment for his condition, but instead received another); *see also Boykin v. Westchester Cnty. Jail*, No. 22-CV-10513, 2024 WL 4252040, at *9 (S.D.N.Y. Sept. 20, 2024) (dismissing claim and noting "complaints alleging disagreement with the course of treatment, like this one involving the scheduling of [the p]laintiff's x-ray, are routinely dismissed in this Circuit, at least where some medical assessment is done"); *Hurst v. Perez*, No. 15-CV-4703, 2017 WL 187532, at *5 (S.D.N.Y. Jan. 13, 2017) (denying inadequate medical care claim where "plaintiff t[ook] issue with [his] treatment . . . insisting stitches were needed and he should have been transferred to an outside hospital [but] plaintiff d[id] not suggest any reason why receiving stitches was the only acceptable treatment").

The Court thus finds that, with respect to Fancher and Lawrence, Plaintiff has failed to plead that he was harmed specifically by their taking him to the emergency room rather than the surgeon. Rather, any harm alleged by Plaintiff arose from the inadequacy of post-operative procedures. "[W]here a delay in providing medical attention is neither the underlying cause of a plaintiff's condition nor contributed to a worsening in the condition, courts have found that the objective prong of a deliberate indifference claim is not met." *Smith v. City of New York*, No. 15-CV-7910, 2016 WL 7471334, at *4 (S.D.N.Y. Dec. 28, 2016) (dismissing deliberate indifference claim where there were no allegations that delay in receiving medical attention itself caused or exacerbated medical condition); *see also Boykin*, 2024 WL 4252040, at *9 (dismissing claim where plaintiff failed to allege "any facts that [a] delay in providing [an] x-ray worsened his condition").

Even if Plaintiff had sufficiently alleged the first prong, Defendants contend that Plaintiff fails to plead that Fancher and Lawrence had sufficient mens rea because he asserts that they *mistakenly* took him to the emergency room rather than the surgeon. (Smith Defs.' Mem. 7.) "Mistakes and misunderstandings in providing medical treatment do not constitute deliberate indifference." *Engles v. Jones*, No. 13-CV-6461, 2018 WL 6832085, at *8 (W.D.N.Y. Dec. 28, 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). And while Plaintiff does allege that he told Fancher and Lawrence that they had taken him to the wrong place, (TAC 10–11), he does not allege facts sufficient to show that they "intentionally delayed access to medical care when [Plaintiff] was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment," *Dumel v. Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *10 (S.D.N.Y. Feb. 25, 2021). Plaintiff does not allege he was in extreme pain at the hospital, merely that he raised that he should be seeing a specialist rather than an emergency care provider. (TAC 10.) Moreover, importantly, Plaintiff alleges that he did indeed receive care at the emergency room and thus did not "suffer[] a complete denial of medical treatment." *Dumel*, 2021 WL 738365, at *10; *see also Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *5 (S.D.N.Y. Sept. 30, 2017) (holding no objective recklessness had been alleged where defendant "upon hearing [the p]laintiff's complaints and questioning him . . . escorted [the p]laintiff to a medical professional"); *compare Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *10 (S.D.N.Y. May 10, 2018) (finding allegation that defendant official knew the plaintiff swallowed 20 pills and had overdosed, but walked away anyway, was sufficient to show mens rea for deliberate indifference), *and Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *9 (S.D.N.Y. Sept. 28, 2018) (concluding nurse who was informed the plaintiff was raped and needed medical

assistance, and who promised the plaintiff she would find some, but "never contacted . . . anyone . . . to provide [the p]laintiff with medical care" had requisite mens rea for deliberate indifference claim). To the extent Plaintiff has successfully alleged that Fancher and Lawrence knew that he should have been brought to the specialist, he has not alleged that they were aware of the seriousness of his condition, nor that he was ultimately denied medical care at the emergency room. He has thus failed to plead "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

For these reasons, Plaintiff's inadequate medical care claims against Fancher and Lawrence fail.

ii. Moore

Plaintiff alleges Moore "completely neglected to change[] [his] dressing," including for two days following his second surgery. (Pl.'s Opp'n to Smith Defs.' Mot. 3; TAC 11–12 (alleging Moore left him to "sit in bloody old gauze for days at a time").) The nurse who eventually treated his wound commented that it was dangerous to leave it unattended for that long. (Pl.'s Opp'n to Smith Defs.' Mot. 3.) He also alleges Moore, as the head nurse, failed to have him admitted to the hospital, despite receiving a number of calls from officers about Plaintiff's deteriorating condition. (TAC 11.) Additionally, Plaintiff attributes the original source of his infection to Moore, as she failed to have an inmate with a staph infection quarantined but instead housed him with Plaintiff. (TAC 12.) He pleads that the infected inmate told him that Moore "said to keep it on the low so he would not need to be quarantined." (TAC 12.)

The threshold inquiry is whether Plaintiff has plead enough facts to show Moore's "personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138. While Plaintiff has not adequately alleged that it was Moore's responsibility to send him to the hospital, he does plead adequate facts from which the Court can infer Moore's direct involvement in the failure to change his wounds and failure to quarantine a staph-infected inmate away from Plaintiff. Nurse Lauren's comments indicate that the nurses on duty, including Moore, should have changed his gauze, and Plaintiff explicitly pleads that Moore was responsible for quarantining the infected inmate, which she did not do, and in fact told the infected inmate not to tell others about his infection. (TAC 12.)

Under the objective component of an inadequate medical care claim, the alleged medical need is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *McFadden v. Annucci*, No. 18-CV-6684, 2021 WL 4942064, at *4 (W.D.N.Y. Oct. 22, 2021). Plaintiff characterizes his treatment at Sullivan County Jail as "three and a half months' worth of the most painful wound care that one could imagine" and "straight torture." (TAC 3.) He asserts that the staph infection ate away parts of his flesh and has lasting impacts on his daily life. (*Id.*) With respect to the failure to change his dressing for several days after his second surgery, he alleges in his opposition that the nurse who eventually treated him "was scared to death for [] Plaintiff[']s life." (Pl.'s Opp'n to Smith Defs.' Mot. 3.) The Court finds the objective component of the inquiry is satisfied because Plaintiff has alleged medical conditions resulting from Moore's neglect that a "a reasonable doctor or patient would perceive . . . as 'important and worthy of comment or treatment,'" that "significantly affect[ed his] daily activities," and that caused him "substantial pain." *Brock*, 315 F.3d at 162; s*ee also Figueroa*, 2018 WL 3315735, at *5 (finding plaintiff met objective standard because of "his

resulting staph infection that developed" from a cut on his hand that was not meaningfully treated "before he was returned to intake housing"); *Whitcomb v. Todd*, No. 04-CV-223, 2008 WL 4104455, at *10 (N.D.N.Y. Sept. 3, 2008) (finding sufficient evidence to establish serious medical needs when the plaintiff claimed a wound became infected with a staph infection).

Plaintiff has also adequately alleged Moore's mens rea with respect to her failure to change his gauze following his second surgery and failure to quarantine the infected inmate. To satisfy the subjective, or mens rea, component of this claim, Plaintiff must allege "that [Moore] acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [Plaintiff] even though [Moore] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. With respect to the failure to change Plaintiff's gauze, Plaintiff adequately alleges that Moore recklessly failed to act with reasonable care to mitigate the risk that multiple days of unchanged gauze could pose. As opposed to Fancher and Lawrence, who ultimately did secure Plaintiff treatment at the emergency room, "Plaintiff has pleaded facts that indicate that [Moore] 'personally' refused [him] treatment." *Tirado v. City of New York*, No. 19-CV-10377, 2021 WL 11646299, at *6 (S.D.N.Y. Jan. 25, 2021). Specifically, Plaintiff alleges that Moore "made it very obvious that she did not want to be bothered with perf[orming] [Plaintiff's] wound care," "that she would "go home . . . leaving [Plaintiff to] sit in bloody old gauze for days at a time," and that she was "upset with [Plaintiff] asking to please have [his] packing changed as it was over[]due to be changed." (TAC 11–12.) These allegations, construed liberally in light of Plaintiff's pro se status, indicate that Plaintiff directly asked Moore to change his gauze and she did not do so, leaving him with unchanged gauze for multiple days, despite being able to see the bloody gauze on Plaintiff. These facts are sufficient to show that Moore "was, or should have

been, aware that Plaintiff was experiencing unnecessary pain or injury from [the failure to change his gauze] and that she declined to take any action." *Feliz v. City of New York*, No. 18-CV-5023, 2019 WL 6831552, at *6 (S.D.N.Y. Aug. 5, 2019), *report and recommendation adopted*, 2019 WL 4386017 (S.D.N.Y. Sept. 13, 2019); *see also Smith*, 2017 WL 4417699, at *5 (holding objective recklessness adequately pled where the defendant performed no treatment in response to the plaintiff, who had a pre-existing heart condition, complaining of chest pain because "[a]t a minimum, however, [the defendant] should have taken *some* action instead of merely returning [the p]laintiff to his cell."). That Moore should have known of the need for wound care is underscored by the fact that the nurse who finally did treat Plaintiff's wounds noted how overdue his wound care was. (Pl.'s Opp'n to Smith Defs.' Mot. 3.) *See Tirado*, 2021 WL 11646299, at *8 (concluding allegations pertaining to the "known risks of [the defendant's] course of conduct" sufficed to show that the actions "amount[ed] to more than a matter for medical judgment" and established objective recklessness (quotation marks omitted)). With respect to the failure to quarantine the infected inmate, Plaintiff alleges more than recklessness or deliberate indifference, but an intentional choice by Moore to not only house the infected inmate in the general population, but also to instruct him not to tell others of his staph infection. (TAC 12.)

The Court finds Plaintiff's allegations satisfy both the objective and subjective elements of an inadequate medical care claim with respect to Moore.

<u>iii. Smith and Bini</u>

Plaintiff alleges that Smith "over[]sees everything that is going on and is in charge of the jail" and "could have stepped up . . . to put a stop to the inadequate medical care" Plaintiff was subjected to. (TAC 10.) As to Bini, Plaintiff alleges that he was next in charge under Smith and

"could have stepped up . . . at any[ ]time and did the right thing to stop the chain reaction of violations." (*Id.*) He also asserts that Bini knew Plaintiff was "not receiving the proper medical care" because correctional officers had brought it to Bini's attention, but nevertheless "allow[ed] all these violations to continue." (*Id.*)

Defendants assert that Plaintiff "makes no allegations that Smith or Bini deprived him of medical care" beyond their witnessing his medical grievances and inadequate treatment. (Smith Defs.' Mem. 10.) That prison officials were aware of the "failure to provide the recommended follow-up care for his wounds" due to "having seen the practices and heard about it from subordinates, reports, the media and other lawsuits" does not sufficiently show their "direct and personal involvement in the alleged constitutional deprivation." *Alba v. City of New York*, No. 23-CV-8619, 2025 WL 2420969, at *29 (S.D.N.Y. July 18, 2025), *report and recommendation adopted*, 2025 WL 2419573 (S.D.N.Y. Aug. 21, 2025); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Pearson v. Annucci*, No. 20-CV-1175, 2026 WL 850086, at *5 (N.D.N.Y. Mar. 27, 2026) ("To establish liability against an official under § 1983, a plaintiff must show the personal involvement of defendants in alleged constitutional deprivations." (quotation marks omitted)). Because Plaintiff does not allege facts showing Smith and Bini's involvement in the inadequate medical treatment beyond their mere awareness of it, his claims against them fail.

b. Conditions of Confinement

Plaintiff's unconstitutional conditions of confinement claim is governed by the same *Darnell* framework as his inadequate medical care claim: "[Plaintiff] must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act

with reasonable care to mitigate the risk that the condition posed to [Plaintiff] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Ware v. Brann*, No. 21-CV-2028, 2024 WL 4202681, at *2 (S.D.N.Y. Sept. 16, 2024) (same), *appeal dismissed*, No. 24-2747 (2d Cir. Feb. 3, 2025); *Quint v. Lamont*, No. 22-CV-1263, 2022 WL 17487978, at *4 (D. Conn. Dec. 6, 2022) (same). The Court construes Plaintiff's complaint as bringing this claim against Defendants Smith and Bini. He alleges that Smith and Bini failed to address his inadequate conditions of confinement, including the housing of infected inmates with healthy inmates. (TAC 10.)

Plaintiff's conditions of confinement claim against Smith and Bini suffers from the same deficiency as his inadequate medical care claim against them. He fails to allege their personal involvement in the comingling of healthy and sick prisoners beyond their being aware of what was going on in the jail. Specifically, he alleges that Smith "over[]sees everything that is going on . . . [at] the jail" and "could have stepped up . . . [to] stop[] the inadequate living conditions that we were all subject to." (TAC 10.) As for Bini, he alleges that he was next in charge after Smith, and thus "could have stepped up . . . anytime" to "stop the chain reaction of violations that certainly almost [cost Plaintiff's] life." (*Id.*) But "mere knowledge and acquiescence [of a constitutional violation] cannot establish personal involvement," *Smolen v. Wesley*, No. 16-CV-2417, 2019 WL 4727311, at *6 (S.D.N.Y. Sept. 25, 2019), even where the defendant has some supervisory authority, *see Rogers v. Washington*, No. 22-CV-835, 2023 WL 4053668, at *3 (D. Conn. June 16, 2023) (insufficient personal involvement where Plaintiff "d[id] not identify any action of the individual supervisory defendants" but "merely conclude[d] that they ordered infected inmates to be housed with uninfected inmates (or that they failed to prevent such comingling)"); *Louime v. Lamanna*, No. 21-CV-9594, 2023 WL 1385180, at *4 (S.D.N.Y. Jan.

31, 2023) (explaining that the Supreme Court has "clarified that a supervisor's mere knowledge and acquiescence cannot establish personal involvement under § 1983," unless the supervisor "took an action that deprived the plaintiff of his or her constitutional rights"). Because Plaintiff fails to plead more than supervisory awareness by Smith and Bini, his claim of inadequate living conditions fails.

c. *Monell* Claim against Sullivan County

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

> supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Defendants contend that Plaintiff's implied *Monell* claim against Sullivan County fails because he fails to plead facts alleging an "official policy or practice that 'was so persistent or widespread as to constitute a custom or usage with the force of law [or] imply the constructive acquiescence of senior policy-making officials.'" (Smith Defs.' Mem. 9 (quoting *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021).)

Construing the Complaint liberally, the Court identifies the following potential policy: "Sullivan County jails being . . . under[]staffed" and "allow[]ing inmates [who had] recently had surgical procedures and new wounds" to be housed among the general population. (TAC 2.) However, because Plaintiff does not indicate which level of staffing would be sufficient to protect his or his fellow inmates' constitutional rights, he has not alleged the understaffing was a result of a policy or custom, and nor has he alleged more funding or staffing was feasible here. Therefore, "[t]he Court is thus left to rely on the general consensus that an allegation of understaffing, without more, does not amount to a constitutional violation." *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *13 (S.D.N.Y. Mar. 29, 2016); *see also Byng v. Wright*, No. 09-CV-9924, 2012 WL 967430, at *15 (S.D.N.Y. Mar. 20, 2012) ("Understaffing may support a section 1983 claim only if more complete funding and staffing were possible, and it was the deliberate intent of the policy making official not to adequately fund and staff the jail, having in mind a gross indifference to the medical needs of detainees.") (alterations adopted and quotation marks omitted); *Clay v. D'Silva*, No. 09-CV-1245, 2011 WL 1135939, at *3 (N.D.N.Y. Feb.1, 2011) (same); *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th

Cir. 2004) (affirming that a plaintiff "cannot rely on a generalized policy of understaffing" to sustain a § 1983 claim); *Free v. Granger*, 887 F.2d 1552, 1556 (11th Cir. 1989) ("It is not sufficient, however, to point to the absence of a medical doctor, or of a round-the-clock nurse, and decry the staffing policy as unconstitutional."). Nor does he allege that this understaffing caused violations of other inmates' constitutional rights, as the Complaint "points to no other occasion when [Defendants'] staffing policy "contributed to or exacerbated an inmate's medical condition." *Melvin*, 2016 WL 1254394, at *13.

Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim against Sullivan County, all claims against Sullivan County are dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *see also Brown*, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury[.]"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation, alteration, and quotation marks omitted)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation." (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985))).

d. HIPAA Claims Against Compasso

"The Court may consider new facts raised in the *pro se* Plaintiff's opposition papers that are consistent with the Complaint." *Plummer v. New York Prop. Ins. Underwriting Ass'n*, No. 20-CV-4805, 2022 WL 2133901, at *1 n.1 (S.D.N.Y. June 14, 2022); *see also Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Because [plaintiff] is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint"). The Court therefore may consider the allegations against Compasso raised in Plaintiff's Opposition.

In his Opposition, Plaintiff alleges that Compasso violated his privacy rights under HIPAA by loudly telling another officer that Plaintiff had a staph infection, so that other inmates heard and subsequently mocked Plaintiff for his condition. (Pl.'s Opp'n to Smith Defs.' Mot. 7.) However, any such claim has no viability, as the Second Circuit has determined that there is no private cause of action under HIPAA. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) ("By delegating enforcement authority to the Secretary of the Department of Health and Human Services, the statute clearly reflects that Congress did not intend for HIPAA to create a private remedy."). Accordingly, Plaintiff's claim for violation of HIPAA is dismissed.

Construed liberally, Plaintiff's allegations could raise a Fourteenth Amendment right to privacy claim based on Compasso's disclosure of Plaintiff's medical condition. The Fourteenth Amendment right to privacy or confidentiality extends to "information relating to the status of one's health." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). "Whether an inmate is entitled to constitutional protection against disclosure of a particular medical condition is determined on a case-by-case basis." *Myers v. Dolac*, No. 09-CV-6642, 2013 WL 5175588, at *7

(W.D.N.Y. Sept. 12, 2013) (citing *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 66 (2d Cir. 2011)). An inmate has a constitutional right to privacy against disclosure of a medical condition that is "both serious in nature and the type that is excruciatingly private and intimate in nature such as those likely to provoke an intense desire to preserve one's medical confidentiality." *Id.* (internal quotation marks and alterations omitted). In the prison context, the medical condition at issue must be an "unusual" medical condition which, if disclosed unnecessarily, "would likely expose an inmate to ridicule, discrimination, or even potentially violence, particularly when the word of the condition is likely to spread through humor or gossip." *Id.*

The Court does not doubt that a staph infection is a serious medical condition, and the seriousness of Plaintiff's infection is apparent from his allegations, including three surgeries requiring over three months of wound care. But the constitutional right to privacy over a medical condition does not turn solely on the seriousness of the condition but also whether "revealing [that] condition would expose a person not to understanding or compassion but to discrimination and intolerance." *Matson*, 631 F.3d at 67 (internal quotations and emphasis omitted). Courts within the Second Circuit have afforded constitutional privacy protection to the conditions of "HIV, transsexualism, and sickle cell anemia," as well as Hepatitis C., while denying protection to other conditions, including fibromyalgia, bipolar condition, arthritis and sleep apnea. *See Swinson v. City of New York*, No. 19-CV-11919, 2022 WL 142407, at *7 (S.D.N.Y. Jan. 14, 2022) (collecting cases); *McLean v. Morton*, No. 20-CV-9925, 2021 WL 810037, at *3 (S.D.N.Y. Mar. 2, 2021) (substantially same); *Myers*, 2013 WL 5175588, at *7–8 (same).

However, the Court need not determine whether staph infections are afforded constitutional privacy protections because the disclosure here was "reasonably related to legitimate penological interests." *Alsaifullah*, 2013 WL 3972514, at *8. Such disclosures are protected "even if the disclosure is made to other inmates and non-medical staff." *Milner v. Mulligan*, No. 16-CV-1857, 2016 WL 7246069, at *3 (D. Conn. Dec. 15, 2016). Plaintiff alleges that Compasso told an officer out loud that he could not pass through Plaintiff's area because Plaintiff had a staph infection "[i]nstead of walking over to the officer and saying it quietly." (Pl.'s Opp'n to Smith Defs.' Mot. 7.) Here, Plaintiff's allegations indicate that Compasso was acting in a legitimate penological interest—maintaining the quarantine—and does not assert facts indicating that the disclosure of his condition was made in a gratuitous manner, particularly considering Plaintiff has alleged his infection arose in the first place from a failure to quarantine another inmate with a staph infection. *Cf. Milner*, 2016 WL 7246069, at *3 (finding disclosure not gratuitous where official "disclosed information to other prison officials who were responsible for [the plaintiff's] safety"); *Myers*, 2013 WL 5175588, at *8 (finding disclosure was gratuitous where official "screamed" about medical condition and "repeated the statement as [they] walked through the cellblock.").

Because the disclosure of Plaintiff's medical condition was not unconstitutional, Plaintiff's claims against Compasso are dismissed. However, Plaintiff is given leave to amend his Complaint to the extent that other facts exist indicating that Compasso's disclosure was gratuitous.

## III. Conclusion

For the reasons set forth above, Stewart's Motion To Dismiss is granted and the Smith Defendant's Motion To Dismiss is denied in part, with respect to the claims against Moore, and

granted with respect to the claims against Smith, Bini, Fancher, Lawrence, Compasso, and Sullivan County. The Court dismisses Plaintiff's claim against Smith, Bini, Fancher, Lawrence, Sullivan County, and Compasso without prejudice. Plaintiff is granted 30 days' leave to amend his complaint to state a valid claim against these Defendants. The amended complaint will replace, not supplement, the Third Amended Complaint. The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 99 and 102.

SO ORDERED.

Dated: September 28, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge